## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

ANDREW L. CAMPBELL,                                    HON.

     Plaintiff,

                                     CASE NO.

v.

RESTORE AMERICA'S VOICE,                               **JURY TRIAL REQUESTED**
a political action committee,
RESTORE AMERICA'S VOICE FOUNDATION,
a Delaware trust company, and
INFOCISION, INC., a Delaware corporation,

     Defendants.

_____/

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff, by his attorneys, and for his Class Action Complaint, states as follows:

### <u>JURISDICTION</u>

1. Jurisdiction is proper with this court under 28 U.S.C. § 1331 as the claims arise under the laws of the United States. Jurisdiction is also proper with this court as there is minimal diversity, pursuant to 28 U.S.C. § 1332(d).

2. This action arises out of Defendants' illegal calls to cell phones soliciting financial support and other supportive conduct by called persons in violation of the Telephone Consumer Protection Act ("TCPA").

3. Venue is proper in this Court because the acts and transactions occurred here, plaintiff resides here, and Defendants transact business here.

### <u>PARTIES</u>

4. The plaintiff is Andrew L. Campbell, who resides in Swartz Creek, Genesee County, Michigan.

5. Defendant Restore America's Voice Foundation ("RAVF") is a Delaware Corporation Trust Company with its principal place of business in Stafford, Texas.

6. Defendant Restore America's Voice ("RAV") is a political action committee located in Arlington, Virginia, and is controlled by Defendant RAVF and/or RAVM

7. Defendant InfoCision, Inc. is a Delaware corporation with its principal place of business in Akron, Ohio.  Defendant InfoCision performs paid telephone solicitations on behalf of its clients.

## FACTUAL ALLEGATIONS

8. Plaintiff has a telephone number (810-701-5670) that is assigned to a cellular telephone service.

9. In late August and early September 2013, while watching television one night, Plaintiff saw a political commercial that requested individuals to call to express their support for or against a movement to defund the Affordable Care Act ("ACA").

10. Plaintiff called the number and voted against any movement to defund the ACA by pushing a button on his cellular phone to indicate a vote against the movement.

11. At no time during this call or any time later did Plaintiff provide prior consent to be called back using an autodialer, prerecorded or computer generated messages.

12. A short time later, Defendants made autodialed calls to Plaintiff's cell phone containing prerecorded messages from conservative political leaders.

13. For the next two months, Plaintiff received from Defendants a variety of messages prerecorded by well-known conservatives such as Glenn Beck, Mike Huckabee, and Ted Cruz.

2

14. The messages mostly concerned Defendants' attempts to forestall the ACA by attempting to "defund Obamacare" or discussed the government shutdown.  Some of the phone calls requested Plaintiff to make phone calls requesting political action, and others sought financial contributions.

15. Around the same time, Plaintiff saw other commercials, on information and belief sponsored by the Defendants RAV and/or RAVF, requesting support from the public to defund the ACA.

16. Plaintiff called that number a few times to urge them to change their position and to tell them to stop calling him.

17. Each time Plaintiff called, an answering machine requested the caller's name and phone number.

18. When Plaintiff heard this message, he hung up each time without leaving a message.

19. Plaintiff received the following calls:

| Date | Time | | Incoming ID number |
|------|------|---|--------------------|
| 9-04-2013 | Wed. | 6:01 pm | (202) 558-4517 |
| 9-05-2013 | Thurs. | 8:02 pm | (202) 558-4517 |
| 9-06-2013 | Friday | 6:36 pm | (202) 888-6165 |
| 9-09-2013 | Monday | 2:11 pm | (202) 400-3498 |
| 9-11-2013 | Wed | 2:06 pm | (202) 400-3498 |
| 9-20-2013 | Friday | 1:07 pm | (202) 684-2132 |
| 9-25-2013 | Wed. | 2:00 pm | (202) 810-0494 |
| | | | |
| 10-03-2013 | Thurs. | 2:17 pm | (202) 684-2132 |
| 10-04-2013 | Friday | 8:34 pm | (202) 817-2894 |
| 10-09-2013 | Wed. | 11:48 am | (202) 817-2894 |
| 10-15-2013 | Tuesday | 5:20 pm | (202) 817-2894 |
| 10-16-2013 | Wed. | 1:37 pm | (202) 559-0127 |
| | | | |
| 11-21-2013 | Thurs. | 4:03 pm | (202) 888-9435 |

20. Each and every number listed in ¶ 18 was owned, used, leased or maintained by Defendant RAV at all relevant times.

21. The telephone calls at issue were made on behalf of Defendant RAV.  The messages left on Plaintiff's phone stated that they calls were made on behalf of Restore America's Voice.

22. On information and belief, Defendant RAV was making these calls at the direction of, or on behalf of, Defendant RAVF.

23. Defendant RAV is a political action committee controlled by Defendant RAVF.  Indeed, on its own website, RAVF identifies RAV as the "political arm" of Defendant RAVF.

24. On information and belief, RAVF directed and controlled Defendant RAV's telephone solicitations at issue in this case.

25. Further, on information and belief, these telephone calls were actually made by Defendant InfoCision on behalf of the RAV Defendants.

26. As a political action committee, RAV must publicly report its expenditures.  RAV's reporting shows that the majority of its expenditures for 2013 have been payments to InfoCision.   The identified purpose for these disbursements is: "telemarketing fundraiser."

27. According to its website, InfoCision is the nation's second largest privately held teleservice company.

28. InfoCision operates various call centers, providing telemarketing services to its customers.  Most of the funds solicited by InfoCision go directly to it, rather than to the organizations it purports to be soliciting for.

29. According to a report from Bloomberg on September 12, 2012, InfoCision often takes as much as 100% of the proceeds raised for the nonprofit organizations it represents.

4

30. According to the report, from 2007 to 2010, InfoCision kept 52% of all funds it solicited on behalf of 30 nonprofit organizations.

31. Givers are often unaware of the share of their gifts retained by the telemarketing firm. Furthermore, the report alleges that the script given to the telemarketers to read to prospective donors contains factual lies about how much money will go to the nonprofit organization. In some instances, these scripts have falsely stated that 75% of the money received from the solicitations goes to the charity, when in fact, most of the money goes to InfoCision.

32. InfoCision makes no secret of its efforts to wring money out of unwitting consumers. InfoCision has created a document giving advice to telemarketers on drafting a telemarketing script. InfoCision says, "Telephone purchases and donations are made on impulse. These are directed not by reason or logic but by feelings of emotion. We are very familiar with the emotions of fundraising: sympathy, fear, anger, guilt, etc." InfoCision then gives advice on how to, among other things, mix guilt with persuasion, artificially boost perceived value of a product, and otherwise deceive customers.

33. It is reported that InfoCision was sued by the Ohio Attorney General for giving false information during its telephone solicitations regarding how much of contributions would actually go to charities. InfoCision agreed to pay $75,000 to settle the case and promised not to mislead potential future donors.

34. On information and belief, it was this company that actually made the calls to Plaintiff and the class members on behalf of the RAV Defendants.

35. Plaintiff seeks damages for each and every call to his cell phone, not simply those which Plaintiff has evidence of receipt.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action as a class action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class consisting of all persons who, on or after December 6, 2009, were called by Defendants at their cellular phone number by the use of any automatic dialing system and/or who received an artificial or prerecorded message at their cellular phone number, and who did not give Defendants prior express consent to engage in this activity.

37. Plaintiff is a member of the class and will fairly and adequately assert and protect the interests of the class.  Plaintiff's interests are consistent with, and not antagonistic to, those of the other members of the class.  He seeks to represent a class of individuals harmed by the same conduct that harmed him.  As such, vindication of his claims will also be vindication of the other class members' claims.

38. Plaintiff has retained attorneys who are experienced in class action litigation, and who will provide adequate representation.  Plaintiff's attorneys are experienced in complex litigation and consumer issues.  They are also experienced in litigating class actions, including consumer class actions.

39. Members of the class are so numerous that joinder of all members of the class is impracticable.  Upon information and belief, there are thousands of members of the class whose identities can be ascertained from the records and files of Defendants and from other sources.

40. Common questions of law and fact regarding Defendants' uniform illegal conduct predominate over any questions affecting only individual members of the class.  Here, the common questions center around whether Defendants' communications violated the TCPA.

This raises primarily questions of law and questions regarding Defendants' conduct.  The actions and circumstances of the individual class members are largely irrelevant.  Accordingly, common questions predominate over individual issues.

41. The prosecution of separate actions by individual members of the class would create a risk of, among other things, inconsistent or varying adjudications with respect to individual members of the class.  Specifically, inconsistent results from multiple actions would result in Defendants treating similarly situated consumers differently.  There is a risk that some individuals will be able to recover for Defendants' illegal conduct, while other individuals may not recover for the same illegal conduct.  Defendants, meanwhile, would be required to operate under these inconsistent mandates, while treating similarly situated individuals differently.

42. The prosecution of separate actions also creates a risk of adjudication with respect to the parties which would, as a practical matter, be dispositive of the interests of other persons not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

43. The claims of the lead Plaintiff are typical of the claims of the class, and the class action method is appropriate for the fair and adequate prosecution of this action.  This case arises from the uniform conduct of the Defendants and is based on Defendants' violations of federal law.  The conduct and circumstances of the individual class members' is largely irrelevant.  Because these claims arise from uniformly-illegal conduct, Plaintiff's claims are typical of the class.

44. Class treatment provides manageable judicial treatment of this case, calculated to bring a rapid conclusion to all litigation of all claims arising out of Defendants' conduct.  Given that

this case revolves around questions of law arising from uniform conduct, it can be efficiently resolved through a class action.

45. The certification of a class would also allow litigation of claims that, in view of the expense of litigation, may be insufficient in amount to support separate claims. Specifically, the damages authorized by the statutes are such that they do not warrant individual litigation by each and every class member.

46. Accordingly, Plaintiff brings this action on behalf of himself and on behalf of all other members of the class.

## CAUSES OF ACTION
### COUNT I
### WILLFUL OR KNOWING VIOLATIONS
### OF THE TELEPHONE CONSUMER PROTECTION ACT
### U.S.C. § 227 (b)(3)(B)

47. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully stated herein.

48. On information and belief, Defendants used an automatic telephone dialing system as defined by 47 USC § 227 (a)(1) when it made each and every call to Plaintiff's cell phone in the last four years.

49. Defendants left prerecorded messages when they called Plaintiff.

50. Defendants did not have Plaintiff's prior express permission to contact Plaintiff on his cell phone using an automatic telephone dialing system or to receive prerecorded messages.

51. Defendants made the calls to Plaintiff willfully.

52. Defendants made the calls to Plaintiff knowingly.

53. Defendants' acts in making the calls to Plaintiff were not accidental.

54. Plaintiff has been damaged by the above acts.

**COUNT II**
**NONWILLFUL AND UNKNOWING VIOLATIONS**
**OF THE TELEPHONE CONSUMER PROTECTION ACT**
**U.S.C. § 227 (b)(3)(B)**

55. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully stated herein.

56. Defendants made the calls to Plaintiff non-willfully.

57. Defendants made the calls to Plaintiff unknowingly.

58. Plaintiff has been damaged by the above acts.

**COUNT III**
**INJUNCTIVE RELIEF**
**U.S.C. §227(b)(3)(A)**

59.  Plaintiff incorporates by reference each and every allegation within this Complaint.

60.  Plaintiff requests that this Court enjoin Defendants, Defendants' agents, employees, representatives and Defendants' successors and assigns from committing acts that violate the Telephone Consumer Protection Act.

**RELIEF REQUESTED**

As to each of the forgoing causes of action, Plaintiff requests the following relief:

**COUNT I**
**WILLFUL OR KNOWING VIOLATIONS OF THE TELEPHONE CONSUMER**
**PROTECTION ACT**
**47 U.S.C. §227(b)(3)**

• statutory damages pursuant to 47 U.S.C. § 227 (b)(3)(B) in the amount of $1,500 for each TCPA violation that this Court finds was made willfully or knowingly; and

• such other relief as the Court deems just and proper.

9

## COUNT II
## NONWILLFUL AND UNKNOWNG VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. §227(b)(3)

- damages pursuant to 47 U.S.C. § 227 (b)(3)(B) in the amount of at least $500 for each TCPA violation that this Court finds was not made willfully and not made knowingly;

- such other relief as the Court deems just and proper.

## COUNT III
## INJUNCTIVE RELIEF
## U.S.C. §227(b)(3)(A)

- for an order enjoining Defendants from committing any act that would violate any provision of the TCPA.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury.


Respectfully submitted,
*David Honigman*

David Honigman (P33146)
David Hansma (P71056)
Mantese Honigman Rossman & Williamson, P.C.
1361 E. Big Beaver Rd
Troy, MI 48083
(248) 457-9200

Dated: December 6, 2013